**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|   |   |   |
|---|---|---|
| | * | |
| RAUL HERNANDEZ GUZMAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:20-cv-2410-PX |
| KP STONEYMILL, INC., *et al.*, | * | |
| Defendants. | * | |

**\*\*\*\*\*\***

<u>**MEMORANDUM OPINION**</u>

Pending before the Court is Plaintiff Raul Hernandez Guzman ("Guzman")'s motion for entry of default judgement.  ECF No. 66.  Defendants KP Wheaton, Inc. ("Wheaton") and KP Stoneymill, Inc. ("Stoneymill") (collectively, "Defendants") have not responded to this motion, and the time for doing so has passed.  *See* Loc. R. 105.2.a.  The matter has been briefed, and no hearing is necessary.  *See* Loc. R. 105.6.  For the following reasons, the Court grants default judgment as to Defendants and awards $44,374.08 in actual damages and $44,374.08 in liquidated damages.

**I.    Background**

The Court accepts as true the well-pleaded factual allegations in the Complaint.[1] Wheaton and Stoneymill each operate one King Pollo Chicken restaurant, both of which are in Wheaton, Maryland.  ECF No. 1 ¶¶ 4–5.  Wheaton and Stoneymill are owned by Daesung Ji

---

[1] "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citation and internal quotation marks omitted).

("Ji"). [2]  *Id.* ¶¶ 6–7.  Ji hired Guzman as a cook on or around November 9, 2015.  *Id.* ¶ 8.
Guzman worked primarily at Stoneymill but occasionally filled in at the Wheaton restaurant.
ECF No. 66-2 ¶ 20.

Guzman worked an average of 72 hours per week and was paid in cash and by check.
ECF No. 1 ¶¶ 9–10.  He never received overtime for hours worked in excess of 40; rather,
Defendants paid Guzman a fixed weekly amount of $550 when he first started, and with periodic
raises, $690 at the time he filed suit.  *Id.* ¶¶ 10–11.  Given the fluctuating hours, some weeks
Guzman's fixed salary translated into less than Maryland's mandatory minimum wage.  *Id.* ¶¶
12, 27, 32.  Neither restaurant ever posted information for its employees about their rights and
entitlements under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, *et seq.*, the
Maryland Wage and Hour Law (the "MWHL"), Md. Code Ann., Labor & Empl. §§ 3-401, *et
seq.*, or the Maryland Wage Payment and Collection Law (the "MWPCL"), Md. Code Ann.,
Labor & Empl. Art., §§ 3-501, *et seq.* *Id.* ¶ 13.

Based on this, Guzman filed suit on August 20, 2020, ECF No. 1 at 1, and left his
position on or around September 27, 2020, ECF No. 66-2 ¶ 26.  He alleges violations of the
FLSA (Count One), equitable tolling under the FLSA (Count Two), violations of the MWHL
(Count Three), and violations of the MWPCL (Count Four).  ECF No. 1 ¶¶ 15–33.

Guzman properly served Defendants, ECF Nos. 4 & 5, and they answered the Complaint,
ECF No. 9.  Thereafter, the case was referred to United States Magistrate Judge Ajmel Ahsen
Quereshi for discovery, ECF No. 30, and later for recommendation on Guzman's sanctions
motion for various discovery deficiencies.  ECF No. 41.  This Court adopted Judge Quereshi's
report and recommendation in total.  ECF Nos. 42, 53 & 60.

---

[2] The case was stayed as to Defendant Ji pursuant to 11 U.S.C. § 362 once he filed personal bankruptcy.  ECF Nos.
52 & 57.

During this time, Defendants' counsel withdrew from representation.  ECF Nos. 48 & 57.

The Court granted Defendants additional time to obtain new counsel and warned them that

pursuant to Local Rule 101.1.a, corporations must be represented by counsel, and they were

advised that their failure to obtain new counsel could result in default judgment being entered

against them.  ECF No. 57.  No new counsel entered an appearance and Defendants filed no

further pleadings.

On January 17, 2023, the clerk entered default against Defendants pursuant to Federal

Rule of Civil Procedure 55(a) and notified Defendants by mail.[3]  *See* ECF Nos. 61, 62 & 63.

Neither Defendant responded.  On April 21, 2023, Guzman moved for entry of default judgment

as to both Defendants.  ECF No. 66.  Again, neither Defendant responded.  Thus, the motion is

ready for resolution.

## II.      Standard of Review

Rule 55(a) provides that "[w]hen a party against whom a judgement for affirmative relief

is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  "A defendant's

default does not automatically entitle the plaintiff to the entry of a default judgment; rather, that

decision is left to the discretion of the court."  *Joe Hand Promotions, Inc. v. Luz, LLC*, No. DKC-

18-3501, 2020 WL 374463, at *1 (D. Md. Jan. 23, 2020); *see S.E.C. v. Lawbaugh*, 359 F. Supp.

2d 418, 421 (D. Md. 2005).  While the Fourth Circuit maintains a "strong policy that cases be

decided on the merits," default judgement may be appropriate where a party is wholly

unresponsive.  *Lawbaugh*, 359 F. Supp. 2d at 421 (internal quotation marks omitted) (quoting

---

[3] The mail was returned as undeliverable as to both Defendants.  *See* ECF Nos. 64 & 65.  All parties maintain an affirmative duty to inform the Court of their current mailing addresses.  *See* Loc. R. 701.3.  Defendants have not provided the Court any updated contact information.

*Dow v. Jones*, 232 F. Supp. 2d 491, 494–95 (D. Md. 2002) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993))).

When considering a motion for default judgement, the Court accepts as true all well-pleaded factual allegations, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact … [but] [t]he defendant is not held … to admit conclusions of law" (citation and internal quotation marks omitted)); *Disney Enter., Inc. v. Delane*, 446 F. Supp. 2d 402, 406 (D. Md. 2006) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." (citations omitted)).  Courts in this district analyzing default judgments have applied the standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to determine whether the allegations are well-pleaded.  *See, e.g., Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544–45 (D. Md. 2011); *Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012); *United States v. Nazarian*, No. DKC-10-2962, 2011 WL 5149832, at *3–4 (D. Md. Oct. 27, 2011).  Where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the allegations are not well-pleaded and, consistent with the Court's discretion to grant default judgment, relief should be denied. *Balt. Line Handling*, 771 F. Supp. 2d at 544 (internal citations omitted) ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted."); *see also Basba v. Xuejie*, No. PX-19-380, 2021 WL 242495, at *3 (D. Md. Jan. 25, 2021).  In this respect, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."  *Balt. Line Handling*, 771 F. Supp. 2d at 540 (internal quotation

marks omitted).  Rather, the Court must decide whether the "well-pleaded allegations in [the plaintiff's] complaint support the relief sought." *Ryan*, 253 F.3d at 780.

Once liability is established, the Court cannot rely solely on the Complaint to assess damages.  *See Lawbaugh*, 359 F. Supp. 2d at 422; *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009).  The Court may either conduct an evidentiary hearing or accept affidavits and other documentary evidence into the record to determine what damages, if any, are warranted.  *See Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (citations omitted).

## III.   Liability

Guzman brings claims against Defendants under the FLSA, the MWHL, and the MWPCL as joint employers.  ECF No. 66-1 at 1.  Collectively, the wage and hour laws hold employers "jointly and severally liable for employees' unpaid wages." *Ford v. Karpathoes, Inc.*, No. ELH-14-00824, 2014 WL 6621997, at *4 (D. Md. Nov. 20, 2014); *McCoy v. Transdev Servs., Inc.*, No. DKC 19-2137, 2022 WL 951996, at *15 (D. Md. Mar. 30, 2022); *see also Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 134 (4th Cir. 2017) (quoting *Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 305, 307, 310 (4th Cir. 2006)).

The Fourth Circuit has "established a two-step framework for analyzing FLSA joint employment claims." *Salinas*, 848 F.3d at 139; *see also McCoy*, 2022 WL 951996, at *6–7, 15 (applying FLSA joint employer framework to MWHL and MWPCL).  First, the Court must "determine whether two entities should be treated as joint employers." *Salinas*, 848 F.3d at 139–40.  Second, the court must "analyze whether the worker constitutes an employee or independent contractor of the combined entity, if they are joint employers, or each entity, if they are separate employers." *Id.* at 140.

As to the first consideration, the Courts look to several non-exhaustive factors:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

> (3) The degree of permanency and duration of the relationship between the putative joint employers;

> (4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

> (5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

> (6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Salinas*, 848 F.3d at 141–42.  "[B]ecause the status of a particular employment relationship is highly fact-dependent . . . the absence of a single factor—or even a majority of factors—is not determinative of whether joint employment does or does not exist."  *Hall v. DIRECTV, LLC*, 846 F.3d 757, 770 (4th Cir. 2017); *see also McCoy*, 2022 WL 951996, at *7.

With these factors in mind, Defendants jointly employed Guzman.  Ji, as the owner and operator, managed both restaurants.  Through Ji, both Defendants retained the power to hire and fire Guzman, discipline him, and determine his rate and manner of pay.  ECF No. 66-2 ¶ 22; ECF No. 1 ¶ 6.  Guzman also worked on site at the Wheaton and Stoneymill restaurants and

6

Defendants paid him paid jointly.  ECF No. 66-2 ¶ 20–25.  In short, Defendants conducted their business as one, to include jointly employing Guzman.

As to the second consideration, whether Guzman was Defendants' employee or an independent contractor, the analysis is equally straightforward.  The Court must focus on the "'economic realities' of the relationship between the worker and the putative employer or employers, in the event the worker is jointly employed." *Salinas*, 848 F.3d at 150 (quoting *Schultz*, 466 F.3d at 304). For this, the Court considers six factors:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Schultz*, 466 F.3d at 304–05.

The applicable factors all point in favor of finding Guzman to be an employee. Defendants set Guzman's schedule and controlled the manner of his work.  *See* ECF No. 1 ¶¶ 8–10.  Guzman, as a full-time cook with a set wage, was also economically dependent on Defendants.  *Cf. Salinas*, 848 F.3d at 150 ("[A] worker whose profit or loss depends on his own creativity, ingenuity, and skill is an independent contractor outside of the FLSA's scope."). Further, Guzman made no economic investments in the business, nor did he enjoy any profit sharing.  Thus, for purposes of the wage and hour laws, Guzman was an employee entitled to wage and hour protections.

The Court next turns to whether Guzman has demonstrated Defendants' liability under each Complaint count.

### A.      FLSA, Equitable Tolling, and MWHL (Counts One, Two, and Three)

The FLSA and MWHL require employers to pay non-exempt employees minimum wage for all hours worked, and overtime pay of at least one and one-half times the regular wage for hours worked in excess of 40 hours per week.  29 U.S.C. §§ 206(a), 207(a); Md. Code Ann., Lab. & Empl. §§ 3-413(b), 3-415(a).  The MWHL "is the state's equivalent of the FLSA," *Watkins v. Brown*, 173 F. Supp. 2d 409, 416 (D. Md. 2001), and its pleading requirements "mirror those of the federal law," *Turner v. Hum. Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003).

Guzman alleges that, although he consistently worked over 40 hours per week, Defendants failed to pay him at the required overtime rate, and in some weeks, failed to pay him even the minimum wage.  ECF No. 1 ¶¶ 17–19, 27.  On average, Guzman worked 72 hours a week, nearly double the 40-hour regular wage requirement.  *Id.*  Further, his set salary did not come near satisfying the minimum and overtime requirements.  From this, the Court easily concludes that Defendants denied him overtime and minimum wages in violation of the FLSA and MWHL.  Thus, default judgment is awarded on Counts One and Three.

In Count Two, Guzman separately alleges that the applicable limitations period must be tolled to his first day of work because Defendants never notified employees of their rights under the FLSA.  ECF No. 1 ¶ 13.  However, the Court need not reach the issue because Defendants failed to raise the statute of limitations as an affirmative defense in their Answer, so the defense is now waived.  *See* ECF No. 9 at 2–3; *see also Albanez v. Breeding Constr., Inc.*, No. DKC 14-1813, 2016 WL 894617, at *3 (D. Md. Mar. 9, 2016) ("[T]he statute of limitations is an affirmative defense, and as Defendants have taken no action in this case, the court will not raise it *sua sponte*.").  Therefore, none of Guzman's claims are barred by the statute of limitations.

**B.      MWPCL (Count Four)**

Last, Defendants have violated the MWPCL by failing to pay the applicable Maryland minimum wage and overtime premium.  The MWPCL permits an employee to sue for unpaid wages if two weeks "have elapsed from the date on which the employer is required to have paid the wages."  Md. Code Ann., Lab. & Empl. § 3-507.2(a); *see also Marshall v. Safeway*, 437 Md. 542, 561–62 (2014) (holding that the MWPCL generally provides an employee with a cause of action against an employer for both the failure to pay wages on time and for "the refusal of employers to pay wages lawfully due.").  However, unlike the MWHL, the MWPCL "does not focus on 'the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment.'"  *Gregori v. Mkt. St. Mgmt., LLC*, No. ELH-16-3853, 2018 WL 4679734, at *5 (D. Md. Sept. 28, 2018) (quoting *Friolo v. Frankel*, 373 Md. 501, 513 (2003)).  Defendants breached that duty throughout Guzman's employment.  Thus, default judgment is awarded as to this claim.

The Court next turns to damages.

**III.   Damages**

In the context of wage and hour claims, the plaintiff need not "prove each hour" of unpaid wages with "unerring accuracy or certainty."  *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988).  Approximations offered through a plaintiff's sworn testimony will suffice.  *Lopez v. Lawns 'R' Us*, No. DKC-07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008).  So long as the plaintiff adduces evidence that establishes "the hours he claims to have worked and the work he claims to have performed for which he was not paid," he is entitled to damages.  *McLaughlin v. Murphy*, 436 F. Supp. 2d 732, 737 (D. Md. 2005).

Guzman attests that for the duration of his employment, he worked an average of 72 hours per week.  ECF No. 66-2 ¶ 10.  He also provides a summary spreadsheet of hours worked from January 10, 2016, until September 27, 2020, that is based on records obtained in discovery.  *See* ECF No. 66-3.  From this, Guzman seeks damages totaling $49,446.82 in unpaid overtime and minimum wages.  ECF No. 66.

Although the Court does not doubt the veracity or quantum of factual proof, Guzman's proposed loss calculation appears to use the wrong applicable Maryland minimum wage.  Guzman asserts, for example, that a $9.25 hourly wage applies in 2016 and 2017, whereas according to the MWHL, the wage was $8.25 per hour from January 10, 2016, until June 30, 2016, and $8.75 per hour from July 1, 2016, until June 30, 2017.  *Compare* Md. Code Ann., Lab. & Empl. § 3-413 (2014), *with* ECF No. 66-3 at 1–3.  Similarly, between July 1, 2018, and July 15, 2018, the minimum wage was $10.10 per hour, not $9.25 per hour.  *Compare* Md. Code Ann., Lab. & Empl. § 3-413 (2018), *with* ECF No. 66-3 at 5.  Finally, between January 5, 2020, and January 19, 2020, the minimum wage was $11.00 per hour, not $ 10.10 per hour.  *Compare* Md. Code Ann., Lab. & Empl. § 3-413 (2019), *with* ECF No. 66-3 at 7–8.  Because Guzman offers no explanation for the disparities, the Court will apply the minimum wages as set forth in the MWHL.  Using the applicable minimum wage rates, but following the same methodology as Guzman, the Court awards Guzman $44,374.08 in unpaid overtime and minimum wages.[4]

Guzman also seeks liquidated damages under the MWHL and the FLSA.  ECF No. 66. Under the FLSA, "[a]ny employer who violates the [FLSA] . . . shall be liable to the employee or

---

[4]Although Guzman established liability under the state and federal wage laws, he may recover only once, *Mould v. NJG Food Serv. Inc.*, No. JKB-13-1305, 2014 WL 1430696, at *2 n.1 (D. Md. Apr. 11, 2014), using Maryland's minimum wage, which, during the relevant period, was greater than the federal minimum wage, 29 U.S.C. § 206(a) (setting the federal minimum wage at $7.25 per hour); *see also* Md. Code Ann., Lab. & Empl. § 3-413(b)(1) (requiring that employers pay "at least the greater of" the federal minimum wage or the state minimum wage).

employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  However, 29 U.S.C. § 260 provides that a court may, in its discretion, reduce or eliminate an award of liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  Because Defendants have failed to respond to this motion, no such showing has been made.  Therefore, Guzman is entitled to $44,374.08 in liquidated damages.

Last, although Guzman requests reasonable attorneys' fees and costs for prosecuting this case, he has submitted no evidence of those expenses incurred.  *See* ECF No. 66.  The FLSA requires violators to pay attorneys' fees and costs, 29 U.S.C. § 216(b), as does the MWHL and MWPCL, Md. Code Ann., Lab. & Empl. §§ 3-427(a)(3), 3-427(d)(1)(iii).  Accordingly, within 14 days from this opinion and accompanying order, Guzman may file a separate petition which establishes the fees and costs owed, and in conformity with the Court's Local Rules.  *See* Loc. R. 109.2.b; App'x B.

## IV.    Conclusion

For the above reasons, Guzman's default judgement motion will be granted, and judgement will be entered against KP Wheaton, Inc. and KP Stoneymill, Inc. for a total of $44,374.08 in actual damages and $44,374.08 in liquidated damages.  Guzman shall have 14 days to petition for reasonable attorneys' fees and costs.  A separate Order follows.

     1/22/2024                                                    /s/
Date                                         Paula Xinis
                                             United States District Judge

11